636 A.2d 80

CUSTOM COMMUNICATIONS ENGINEERING, INC., A NEW JERSEY CORPORATION, PLAINTIFF–APPELLANT, v. E.F. JOHNSON COMPANY, A MINNESOTA CORPORATION; TEL–AIR COMMUNICATIONS, INC., A NEW JERSEY CORPORATION; AND JONACH ELECTRONICS, INC., DEFENDANTS–RESPONDENTS, AND WESTERN UNION CORPORATION, A DELAWARE CORPORATION; ROBERT LIBBEY, AN INDIVIDUAL; REILLY RADIO COMMUNICATIONS, A SOLE PROPRIETORSHIP; GLEN REILLY, AN INDIVIDUAL; COMMUNICATIONS SERVICES, INC., A NEW JERSEY CORPORATION; KREEGER ASSOCIATES, A SOLE PROPRIETORSHIP; AND BRUCE KREEGER, AN INDIVIDUAL, DEFENDANTS.

Superior Court of New Jersey
Appellate Division

Submitted October 27, 1993—Decided December 30, 1993.

532

534

Before Judges KING, HAVEY and ARIEL A. RODRÍGUEZ.

*Hersh, Ramsey & Berman, P.C.,* attorneys for appellant (*David Scott Mack,* on the brief).

*Schenck, Price, Smith & King,* attorneys for respondents (*Michael A. Moroney* and *Edward W. Ahart,* of counsel; *M. Sheilah O'Halloran* and *Paul Weidlich,* on the brief).

The opinion of the court was delivered by

HAVEY, J.A.D.

The central issue on appeal is whether the four-year statute of limitations under the Uniform Commercial Code (UCC), *N.J.S.A.* 12A:2–725(1), is applicable to the parties' dealership agreement.

Plaintiff *Custom Communications Engineering, Inc.* (Custom) appeals from an order for summary judgment dismissing its complaint against defendants E.F. Johnson Company (Johnson), Tel–Air Communications, Inc. (Tel–Air) and Jonach Electronics, Inc. (Jonach). In its complaint, Custom seeks damages against Johnson for economic loss arising from Johnson's termination of its dealership agreement with Custom. The remaining defendants are other Johnson dealers who, Custom alleges, conspired with Johnson and tortiously interfered with Custom's agreement. The Law Division judge determined that *N.J.S.A.* 12A:2–725(1) applied and therefore Custom's complaint was time-barred because it was filed four years after the accrual of its cause of action. We affirm the summary judgment order as to Johnson, but reverse as to the defendant-dealers.

Johnson is a manufacturer of radio equipment. On June 17, 1978, Custom entered into a Land Mobile Dealer Agreement with Johnson which granted Custom the right to sell and service Johnson's products within a designated "Dealer's Territory" in northern New Jersey. The agreement provides that Custom is required to use its best efforts to promote the sale of Johnson products in the designated area and to maintain an inventory of products, as well as a service facility for the benefit of Johnson customers.

The agreement also restricts Custom to the selling of Johnson products within its designated territory. Although the agreement does not expressly state that Custom's territory was exclusive, Custom claims that Johnson had made oral representations as to its exclusivity. Paragraph 3 of the agreement provides that Custom may sell Johnson products in the territory of other dealers only upon their approval and upon Custom paying them compensation for the sales. Paragraph 11 specifies that the relationship between the parties was "that of buyer and seller." Finally, paragraph 14 provides that either party may terminate the agreement, with or without cause, upon thirty days' written notice.

According to Custom, in 1978 Johnson began making sales in Custom's territory through other dealers without permission and without compensating Custom. Custom also claims that Johnson established other dealers in Custom's "exclusive" territory beginning some time in 1981–82. On March 18, 1985, Johnson terminated the agreement.

On March 20, 1985, Custom filed a complaint against defendants alleging breach of contract, conspiracy and tortious interference with its agreement. Custom amended the complaint on April 8, 1985 adding a count charging Johnson with a violation of the New Jersey Franchise Practices Act, *N.J.S.A.* 56:10–1 to –15. Custom also demanded an accounting and a credit for the sales made by Johnson and its other dealers within Custom's territorial limits. The complaint was dismissed on January 24, 1986 for failure to answer interrogatories.

Custom filed a second complaint on July 7, 1986 which, except for the abandonment of its claim under the Franchise Practices Act, was essentially identical to its original complaint. The second complaint was dismissed without prejudice for lack of prosecution on January 31, 1987.

On April 19, 1988, Custom filed the present complaint which basically mirrored the second complaint, except that it adds a count charging Johnson with wrongful discharge. Defendants moved for summary judgment, arguing that Custom's cause of action accrued no later than 1982, and thus was barred by the four-year statute of limitations under the UCC, *N.J.S.A.* 12A:2–725. Judge D'Ambrosio of the Law Division agreed, reasoning that since the parties were involved in a "sales" agreement, Custom's claim of breach of contract was governed by the UCC time-bar. He also concluded that because Custom's tort claims against all defendants were "derivative" of its breach of contract claim, they were barred as well.

I

*N.J.S.A.* 12A:2–725(1) provides that an action for breach of any contract for "sale" under the UCC must be commenced within

four years after the accrual of the cause of action. *N.J.S.A.* 2A:14–1, the six-year statute of limitation generally governing breach of contract claims, expressly states that its time-bar does not apply to any action governed by *N.J.S.A.* 12A:2–725(1). Article 2 of the UCC applies to "transactions in goods." *N.J.S.A.* 12A:2–102. The term "goods" is defined as "all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid[.]" *N.J.S.A.* 12A:2–105(1). A "sale" involves "the passing of title from the seller to the buyer for a price." *N.J.S.A.* 12A:2–106(1).

██ Notwithstanding these narrowly-defined terms, whether *N.J.S.A.* 12A:2–725(1) applies depends on how the contract between the parties may be accurately characterized: as one involving a transaction of goods (*N.J.S.A.* 12A:2–102) plus incidental services, or as one for services plus the incidental sale of goods. *See Meyers v. Henderson Constr. Company,* 147 *N.J.Super.* 77, 79, 370 *A.*2d 547 (Law Div.1977). The legal analysis most frequently employed when courts are faced with such mixed contracts is that Article 2 of the UCC is applicable "if the sales aspect predominates and is inapplicable if the service aspect predominates." Sonja A. Soehnel, Annotation, *Applicability of UCC Article 2 to Mixed Contracts for Sale of Goods and Services,* 5 *A.L.R.* 4th 501, 505 (1981), and see cases annotated therein.

Custom argues that the six-year statute of limitations under *N.J.S.A.* 2A:14–1 applies because its agreement with Johnson was a dealership or distributorship, the predominate purpose of which was not the "sale" of goods, but for Custom to act as Johnson's agent in promoting its products, and to provide a service facility for customers who have purchased those products.

██ No doubt there are nonsale aspects to the parties' agreement. However, we view the nonsale components as intending to foster the dominant purpose of the agreement: to sell Johnson products through Custom to customers in Custom's distribution area. For example, under the agreement, Custom is required to

buy from Johnson and maintain an inventory of Johnson products. Also, Custom's purchase orders are subject to the price, terms and conditions set by Johnson at the time the order was made, and Johnson reserves the right to "alter ... the credit terms upon which [Custom] *buys* [Johnson's] Products and parts thereof." (Emphasis added). Finally, paragraph 11 of the agreement expressly states that the relationship between the parties shall be "buyer" and "seller." Thus, it is clear that a critical aspect of the agreement is the sale of goods from Johnson to Custom "for a price." *N.J.S.A.* 12A:2–106(1).

We accept Custom's argument that the agreement may be characterized as a dealership or distributorship contract: Custom is an intermediary in the consumer chain whose function is to promote and sell products manufactured by Johnson. Focusing strictly on the definitions under Article 2, one might assume that the UCC does not reach such a relationship because of the hybrid nature of the parties' respective roles.

However, the rule in most out-of-state jurisdictions is that dealerships or distributorships are to be treated as sales of goods contracts under the UCC. *See Intercorp, Inc. v. Pennzoil Company,* 877 *F.*2d 1524, 1527 (11th Cir.1989) (Alabama law); *Monarch Beverage Company, Inc. v. Tyfield Importers, Inc.,* 823 *F.*2d 1187, 1190 (7th Cir.1987) (Indiana law); *Sally Beauty Company, Inc. v. Nexxus Products Company, Inc.,* 801 *F.*2d 1001, 1006 (7th Cir. 1986) (Texas law); *Corenswet, Inc. v. Amana Refrigeration, Inc.,* 594 *F.*2d 129, 134 (5th Cir.), *cert. denied,* 444 *U.S.* 938, 100 *S.Ct.* 288, 62 *L.Ed.*2d 198 (1979) (Iowa law); *De Filippo v. Ford Motor Company,* 516 *F.*2d 1313, 1322–23 (3rd Cir.), *cert. denied,* 423 *U.S.* 912, 96 *S.Ct.* 216, 46 *L.Ed.*2d 141 (1975) (Pennsylvania law); *Paulson, Inc. v. Bromar, Inc.,* 775 *F.Supp.* 1329, 1333 (D.Haw. 1991), and cases cited therein (Hawaii law); *Jo–Ann, Inc. v. Alfin Fragrances, Inc.,* 731 *F.Supp.* 149, 154 (D.N.J.1989) (New Jersey law); *Babst v. FMC Corp.,* 661 *F.Supp.* 82, 87 (S.D.Miss.1986) (Mississippi law); *Kirby v. Chrysler Corp.,* 554 *F.Supp.* 743, 749–50 (D.Md.1982) (Maryland law); *Moridge Mfg. Company v. But-*

*ler*, 451 *N.E.*2d 677, 680 (Ind.Ct.App.1983). The common theme expressed in nearly all of the cases is that, although most dealership or distributorship agreements involve more than a mere sale of goods, the sales aspect of the relationship predominates. *See Sally*, 801 *F.*2d at 1005–06. Accordingly, courts have not hesitated to conclude that a direct dealership agreement, as here, is subject to the four-year statute of limitations under § 2–725(1) of the UCC. *See Kirby*, 554 *F.Supp.* at 749.

We adopt the majority rule as sound, since it is entirely consistent with the underlying purposes of the UCC: to foster consistency and predictability in the commercial marketplace. *See N.J.S.A.* 12A:1–102. Indeed, for that reason, our Supreme Court has observed that "the U.C.C. is the more appropriate vehicle for resolving commercial disputes arising out of business transactions between persons in a distributive chain." *Spring Motors Distribs., Inc. v. Ford Motor Company*, 98 *N.J.* 555, 571, 489 *A.*2d 660 (1985). This fundamental theme of the UCC is particularly pertinent in applying a statute of limitations to claims arising under Article 2. The purpose of § 2–725(1) is "[t]o introduce a uniform statute of limitations for sales contracts," thus eliminating jurisdictional variations. Comment to *N.J.S.A.* 12A:2–725(1). Application of the UCC time-bar to distributorship and dealership agreements accommodates the interests of both parties: it permits the nationwide merchant-seller to rely on the repose afforded by a uniform statute, and gives notice to the local merchant-dealer that all claims for economic loss under Article 2 must be filed within four years of the accrual of its cause of action.

Citing *Lorenz Supply Company v. American Standard, Inc.*, 100 *Mich.App.* 600, 300 *N.W.*2d 335 (1980), *aff'd*, 419 *Mich.* 610, 358 *N.W.*2d 845 (1984), Custom argues that its agreement with Johnson falls outside the ambit of the UCC because it was not obligated to buy a specific quantity of goods from Johnson. In *Lorenz*, the Michigan Court of Appeals held that the UCC did not apply to a distributorship agreement where the dealer was not required to buy "a certain quantity of goods or, . . . to buy *any*

goods ... in the future." 300 *N.W.*2d at 338. In so concluding, the court relied on the UCC's definitions of "goods" (§ 2–105) and "sale" (§ 2–106), as well as the UCC's statute of frauds (§ 2–201), which is satisfied if a writing indicates a contract for the sale of goods between the parties, and the writing "specif[ies] a quantity." Ronald A. Anderson, 2 *Uniform Commercial Code* § 2–201:97 at 61 (3rd ed. 1982). The Michigan Supreme Court affirmed. *Lorenz,* 358 *N.W.*2d at 845.

However, we agree with Justice Brickley's concurring opinion in *Lorenz,* 358 *N.W.*2d at 851–53 (Brickley, J., concurring), that the Court of Appeals failed to distinguish between the specific finding of a "contract for the sale of goods" under the UCC statute of frauds, and the "transaction in goods" criteria (§ 2–102) for the general application of the UCC's Article 2. The statute of frauds provision is "designed for a pure sale of goods," *Monetti, S.P.A. v. Anchor Hocking Corp.,* 931 *F.*2d 1178, 1185 (7th Cir.1991), whereas "transaction in goods" is a broad term "and on its face would seem to cover an agreement that has as its purpose the ongoing transfer of title to goods between the parties." *Lorenz,* 358 *N.W.*2d at 852 (Brickley, J., concurring). Thus, because of the mixed character of many distributorships, the UCC's statute of frauds may or may not apply in a given case; the distributorship is nevertheless generally governed by other provisions of the UCC because it involves a "transaction in goods." *See Monetti,* 931 *F.*2d at 1184–85. This result is consistent with the UCC's goal to provide "its own machinery for expansion of commercial practices" and for change in the law "embodied in this Act to be developed by the courts in light of unforeseen and new circumstances and practices." Comment to *N.J.S.A.* 12A:1–102. *See also Dreier Company, Inc. v. Unitronix Corp.,* 218 *N.J.Super.* 260, 269–70, 527 *A.*2d 875 (App.Div.1986). So construed, we are satisfied that Article 2 covers the parties' dealership-distributorship agreement.

## II

Custom argues that even if its breach of contract claim under its complaint (count one) is time-barred, the remaining five counts are

not. Counts two and three demand an accounting and a credit from Johnson for sales by other dealers within Custom's territory; counts four and five allege that Johnson and the defendant-dealers conspired against Custom and tortiously interfered with its contractual rights; and count six alleges Johnson wrongfully terminated the agreement in violation of an implied covenant of good faith and fair dealing.

We agree with Judge D'Ambrosio that the remaining five counts against Johnson are time-barred under *N.J.S.A.* 12A:2–725(1). The demand for an accounting and a credit is a component of Custom's economic damage claim inextricably related to the claimed breach of contract, and thus is controlled by the four-year time-bar. The counts sounding in tort derive exclusively from the allegations and facts underlying the breach of contract claim, and thus should not be considered separate claims for statute of limitation purposes. *See Foodtown v. Sigma Marketing Sys., Inc.,* 518 *F.Supp.* 485, 489 (D.N.J.1980) (plaintiff's allegations of fraud and tortious misrepresentation were nothing more than a "dress up" of its contract claim, and thus were barred by § 2–725(1)). *Compare Triangle Underwriters, Inc. v. Honeywell, Inc.,* 604 *F.*2d 737, 747–48 (2d Cir.1979) (plaintiff's fraud claim is subject to six-year statute of limitations, rather than § 2–725(1) because claim consisted of an independent false representation made in the inducement before creation of the contract). A transaction should not be removed from the ambit of the UCC to the area of tortious conduct simply by making general allegations of fraud: otherwise the form of the pleading could negate the purpose and force of § 2–725. *See Closed Circuit Corp. of Am. v. Jerrold Electronics Corp.,* 426 *F.Supp.* 361, 364 (E.D.Pa.1977).

In essence, Custom's complaint seeks recovery from Johnson for economic loss for a breach of sales contract. As our Supreme Court has held, "a commercial buyer seeking damages for economic loss only should proceed under the U.C.C. against parties in the chain of distribution." *Spring Motors Distribs.,* 98 *N.J.* at 578, 489 *A.*2d 660. Thus, "the weight of authority supports the propo-

sition that economic expectations that are protected by the U.C.C. are not entitled to supplemental protection by negligence principles." *Id.* at 581, 489 *A.*2d 660. Consequently, Custom's tort claims against Johnson are time-barred.

We acknowledge our recent holding in *D'Angelo v. Miller Yacht Sales,* 261 *N.J.Super.* 683, 688, 619 *A.*2d 689 (App.Div.1993), that, while the UCC provides the exclusive remedy to a consumer-buyer for the direct economic loss arising from a breach of warranty, the UCC (*N.J.S.A.* 12A:1–203) expressly preserves a consumer-buyer's common-law fraud and Consumer Fraud Act (*N.J.S.A.* 56:8–1 to –14) claims arising from a sales transaction. Such fraud claims are governed by the six-year statute of limitations under *N.J.S.A.* 2A:14–1, rather than the four-year limitation period of the UCC. *D'Angelo,* 261 *N.J.Super.* at 688, 619 *A.*2d 689. However, *D'Angelo* involved a claim that the merchant "willfully and with malice" misrepresented a yacht as new. *Id.* at 686, 619 *A.*2d 689. No such fraud claim is asserted here.

■ It is true that Custom's wrongful discharge count is not barred by the four-year statute of limitations, since Johnson terminated the agreement on March 18, 1985, and Custom's latest complaint was filed on April 19, 1988. The Law Division judge did not address the issue. However, the claim was properly dismissed because it has no legal or factual basis. By the express terms of the parties' agreement, Johnson had the right to terminate it without cause upon thirty-days' notice. Where, as here, the right to "terminate a contract is absolute under the wording in an agreement, the motive of a party in terminating such an agreement is irrelevant to the question of whether the termination is effective." *Karl's Sales and Service, Inc. v. Gimbel Brothers, Inc.,* 249 *N.J.Super.* 487, 495, 592 *A.*2d 647 (App.Div.), *certif. denied,* 127 *N.J.* 548, 606 *A.*2d 362 (1991).

■ Although we find that Custom's complaint against Johnson is time-barred, we are satisfied that the tort claims against the dealer-defendants are not. Custom alleges that Tel–Air Communications conspired with Johnson to "take over" Custom's accounts

in its dealership territory, thereby causing Custom to lose profits as well as a "diminution of its goodwill and reputation." Count five charges that Tel–Air and other defendant-dealers made sales within Custom's dealer territory and "knowingly ..., together with the protection ... and assistance of Johnson ... tortiously interfered with the economic benefits due Custom." As a result of defendants' "willful and intentional interference with Custom's accounts," defendants have caused Custom to "lose clients, lose profits, goodwill and have its reputation diminished and will in the future continue to suffer lost profits, diminution of its goodwill and reputation."

■ By its very terms, *N.J.S.A.* 12A:2–725(1) applies to "an action for breach of any contract for sale." The dealers were not parties to the Custom–Johnson agreement and thus could not breach it. Moreover, the dealers' alleged tortious conduct did not involve a "transaction in goods" between merchants under Article 2 of the UCC. For example, it is "fundamental" that a tortious interference claim be directed against defendants "who are not parties to the relationship." *Printing Mart v. Sharp Electronics Corp.*, 116 *N.J.* 739, 752, 563 *A.2d* 31 (1989). In this case the "relationship" is contractual, between Custom and Johnson. Also, unlike Custom's breach of contract claim against Johnson, Custom must prove that the dealers' interference "was done intentionally and with 'malice.' " *Id.* at 751, 563 *A.2d* 31. Finally, Custom demands damages against the dealers for "diminution of its goodwill and reputation" beyond the economic loss suffered as a result of Johnson's alleged breach of agreement.[1] Therefore, the six-year statute of limitations under *N.J.S.A.* 2A:14–1 controls. We therefore remand for a determination as to whether the claims

---

[1] The tortious interference claim is also asserted against Johnson. However, "where a person interferes with the performance of his or her own contract, the liability is governed by principles of contract law." *Printing Mart*, 116 *N.J.* at 753, 563 *A.2d* 31; *Kopp, Inc. v. United Technologies, Inc.*, 223 *N.J.Super.* 548, 559, 539 *A.2d* 309 (App.Div.1988). Therefore, the statute of limitations issue aside, there is no legal basis for the tortious interference claim against Johnson.

against the dealers are time-barred and, if not, for a trial on the merits.

### III

We have considered Custom's argument that Johnson should be estopped from asserting the statute of limitations and are satisfied it is completely without merit. *R.* 2:11–3(e)(1)(E). This is not a case where, as in *Zaccardi v. Becker (Zaccardi II)*, 88 *N.J.* 245, 440 *A.*2d 1329 (1982), the case remained on the calendar list despite its dismissal for plaintiff's failure to answer interrogatories. In *Zaccardi II*, plaintiff did not refile the complaint because the parties continued the discovery process, and plaintiff, to his prejudice, assumed that his original action was still viable. *Id.* at 257–58, 440 *A.*2d 1329. Here, Custom's original and second complaints were dismissed on January 24, 1986 and January 31, 1997 respectively. No discovery was thereafter conducted, and no appeal was taken until he filed the present complaint on April 19, 1988. Thus, Custom slept on its rights for fourteen months before instituting the present action, which the Law Division properly found was time-barred.

The order for summary judgment in favor of Johnson is affirmed. Summary judgment in favor of defendant dealers is reversed and the matter is remanded for further proceedings.