694 A.2d 1077

QUALITY GUARANTEED ROOFING, INC., PLAINTIFF–
RESPONDENT, v. HOFFMANN–LA ROCHE, INC.,
DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued June 10, 1997—Decided June 25, 1997.

Before Judges MICHELS, MUIR, Jr. and KLEINER.

*Philip W. Crawford* argued the cause for appellant (*Crummy, Del Deo, Dolan, Griffinger & Vecchione,* attorneys; *Mr. Crawford* and *Phillip J. Duffy,* on the brief).

*John J. Cardile* argued the cause for respondent (*Michael J. Mella,* attorney; *Mr. Cardile,* on the brief).

The opinion of the court was delivered by

MICHELS, P.J.A.D.

Defendant Hoffmann–La Roche, Inc. (Hoffmann–La Roche) appeals from a judgment of the Law Division that awarded plaintiff Quality Guaranteed Roofing, Inc. (Quality Roofing) $162,366.48 due under a contract for goods and services rendered in connection with the installation of a watertight roof and that dismissed Hoffmann–La Roche's counterclaim for damages for breach of contract and warranty, negligence, and misrepresentation.

Briefly, Hoffmann–La Roche entered into a number of separate contracts with Quality Roofing for the installation of foam roofs upon a number of buildings located at Hoffmann–La Roche's Nutley, New Jersey facility. After the installation of several roofs, the parties contracted for additional foam roofing work to be performed on Building 71. Upon or near completion of the installation of Building 71's roof, Hoffmann–La Roche suspended all remaining work and/or payments allegedly because it had discovered quality deficiencies with Quality Roofing's workmanship. Because of Quality Roofing's alleged poor performance, Hoffmann–La Roche refused to let Quality Roofing bid on the repair work and did not demand that Quality Roofing perform any repairs. Thereafter, Quality Roofing instituted this action against Hoffmann–La Roche to recover the balance due under the con-

tract pertaining to Building 71. Hoffmann–La Roche counter-claimed.

At the conclusion of a bench trial, the trial court awarded Quality Roofing damages of $162,366.48 and dismissed Hoffmann–La Roche's counterclaim. The trial court held that the Uniform Commercial Code (UCC) governed the contracts involved in this matter. In reaching this conclusion, the trial court explained "that the dominating factor in the transaction between the plaintiff and the defendant was the sale of materials which were identifiable and moveable at the time of contracting." The trial court also found that Hoffmann–La Roche had accepted the roofs of the buildings which had been completed by Quality Roofing and had paid for these roofs in full. The trial court held:

> Now the absolute undisputed testimony by all of the witnesses who testified in this case, both for the plaintiff and the defendant, was to the effect that when the plaintiff was barred from the premises, no notice of any kind was given to the plaintiff of the alleged defects, nor was the plaintiff given any opportunity whatsoever to cure any such defects.
>
> Therefore, according to the UCC and the statute which I've just read [, *N.J.S.A.* 12A:2–607], the defendant is barred from any remedy against the plaintiff for all of the roofs that were accepted.

Hoffmann–La Roche appealed.

Hoffmann–La Roche seeks a reversal of the judgment and a remand for a new trial, contending that the contracts were service contracts with any sale of goods being incidental thereto and that, therefore, its contractual relationship with Quality Roofing was not governed by the UCC. We agree and reverse.

The Uniform Commercial Code–Sales (UCC–Sales), *N.J.S.A.* 12A:2–101 to –725, applies to "transactions in goods." *N.J.S.A.* 12A:2–102. The UCC–Sales does not, however, apply to service contracts. Neither party disputes that the contracts in question were "transactions" and concerned "goods." Additionally, neither party disputes that the contracts in question also concerned service or labor. Thus, the contracts are mixed goods and services contracts. *See Newmark v. Gimbel's Inc.*, 54 *N.J.* 585, 593,

258 *A*.2d 697 (1969). The question, of course, is whether the UCC–Sales applies to these mixed contracts.

██ Whether the UCC–Sales governs a mixed contract "depends upon how the contract may be accurately characterized—as one for the sale of goods ... plus incidental services, or as one for ... services with the [service provider] furnishing materials as well as labor." *Meyers v. Henderson Constr. Co.*, 147 *N.J.Super.* 77, 79, 370 *A*.2d 547 (Law Div.1977). *See also Custom Communications Eng'g, Inc. v. E.F. Johnson Co.*, 269 *N.J.Super.* 531, 537, 636 *A*.2d 80 (App.Div.1993). "The legal analysis most frequently employed when courts are faced with such mixed contracts is that Article 2 of the UCC is applicable 'if the sales aspect predominates and is inapplicable if the service aspect predominates.' " *Custom Communications Eng'g, Inc. v. E.F. Johnson Co.*, supra, 269 *N.J.Super.* at 537, 636 *A*.2d 80 (citation omitted). *See also Docteroff v. Barra Corp. of Am.*, 282 *N.J.Super.* 230, 240, 659 *A*.2d 948 (App.Div.1995); *Meyers v. Henderson Constr. Co.*, supra, 147 *N.J.Super.* at 82, 370 *A*.2d 547.

Whether the goods aspect or the services aspect predominate in a mixed contract is a question of fact. *See Conopco, Inc. v. McCreadie*, 826 *F.Supp.* 855, 868 (D.N.J.1993), *aff'd*, 40 *F*.3d 1239 (3d Cir.1994). *See also Docteroff v. Barra Corp. of Am.*, supra, 282 *N.J.Super.* at 240, 659 *A*.2d 948. When error in the factfinding of a judge is alleged, the scope of appellate review is limited. The court will only decide whether the findings made could reasonably have been reached on sufficient or substantial credible evidence present in the record, considering the proof as a whole. The court gives "due regard" to the ability of the factfinder to judge credibility. *See Rova Farms Resort, Inc. v. Investors Ins. Co. of Am.*, 65 *N.J.* 474, 484, 323 *A*.2d 495 (1974); *Close v. Kordulak Bros.*, 44 *N.J.* 589, 599, 210 *A*.2d 753 (1965).

In determining the predominant nature of a mixed contract, courts have found it "helpful to look at the language and circumstances surrounding the contract.... the compensation structure of the contract.... [and] the interrelationship of the goods and

services to be provided; whether one is incidental to the other as well as the intrinsic worth of the goods being provided." *Conopco, Inc. v. McCreadie, supra,* 826 *F.Supp.* at 868 (citations omitted). One court has also considered whether the nonsale aspects of the contract are viewed as intending to foster the dominant purpose of the contract. *See Custom Communications Eng'g, Inc. v. E.F. Johnson Co., supra,* 269 *N.J.Super.* at 537, 636 *A.*2d 80.

■ Within the contract pertaining to Building 71, Hoffmann–La Roche is described as "Owner" and Quality Roofing is described as "Contractor." The contract itself is termed "Construction Agreement." The contract price was to be paid on a scheduled basis as the installation work progressed. While the roofing materials and the installation service were inextricably linked to one another, the purchase of the roofing material was merely incidental to the dominant purpose of the contract: the installation of the roof. The goods aspects of the contract, the roofing materials, were simply to foster the dominant purpose of the contract, to wit, the construction of a new roof.

The result we reach here is supported by *Frommert v. Bobson Constr. Co.,* 219 *Mich.App.* 735, 558 *N.W.*2d 239, 240 (1996). There, the Michigan Court of Appeals held that a contract for the removal of an old roof and for the installation of a new polybond roofing system "was predominantly one for services, rather than one for a sale of goods . . . ." stating:

> In this case, it is difficult to conceive of the goods being supplied, the roofing material, as the predominant purpose of the contract. That is, plaintiff needed to have a new roof installed, and the service of removing the old roof and replacing it with the new roofing system was clearly the predominant purpose of the contract.
>
> Further, the contract itself is specifically identified as a "home improvement and installment contract" and defendant is referred to as a contractor in the contract. Defendant essentially undertook to remove and replace a leaky roof. The goods were merely incidental to the purpose of the contract. Plaintiff was not contracting to purchase roofing material only, because the goods would have been of no value unless they were installed.
>
> [*Id.* 558 *N.W.*2d at 240–41.]

In *Montgomery Ward & Co. v. Dalton,* 665 *S.W.*2d 507, 510 (Tex.App.1983), the plaintiffs entered into a written contract with

the defendant to install roofing on their house with the materials to be used and labor to be performed specifically described in the contract. The Texas court wrote: "The complaint made in this case related only to the manner of installing the shingles, the installation being handled solely by a subcontractor. The essence or dominant factor of the transaction before us was the furnishing of the labor to install the roof." *Id.* at 511. Similarly, Hoffmann–La Roche's complaint is not with the roofing materials used by Quality Roofing, but rather with Quality Roofing's installation of those materials to achieve the dominant purpose of the contracts—the installation of new roofs.

Analyzed in light of the foregoing principles, we are convinced that there was not sufficient or substantial credible evidence present in the record as a whole to support the trial court's finding that the contracts in question were for the sale of goods. Rather, the evidence supports the conclusion that the contracts were predominately for services—the installation of roofs. Therefore, we hold that the trial court erred in applying the UCC–Sales to resolve this matter.

Accordingly, the judgment under review is reversed and the matter remanded for a new trial on all issues raised by the complaint and counterclaim consistent with the views expressed in this opinion. In view of our decision, we need not reach the other issue raised by Hoffmann–La Roche.