704 A.2d 1353

JOHN C. MCGARRY, PLAINTIFF–APPELLANT, v. SAINT ANTHONY OF PADUA ROMAN CATHOLIC CHURCH, DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued January 22, 1998—Decided February 11, 1998.

Before Judges SHEBELL, D'ANNUNZIO and COBURN.

*Brian M. Cige*, argued the cause for appellant.

*John S. Favate* argued the cause for respondent (*Bumgardner, Hardin & Ellis*, attorneys; *Mr. Favate*, of counsel; *Steven Yarusinsky*, on the brief).

The opinion of the court was delivered by

SHEBELL, P.J.A.D.

Plaintiff, John C. McGarry, appeals from the December 20, 1996 order granting summary judgment to defendant, Saint Anthony of Padua Roman Catholic Church (St.Anthony's). We affirm.

On March 30, 1995, plaintiff filed a complaint in the Law Division against Saint Anthony's alleging breach of employment contract, wrongful discharge, defamation and interference with a prospective economic advantage. Thereafter, counts two and

three, which alleged emotional and/or physical injury and defamation, were voluntarily dismissed by plaintiff. Plaintiff's claims for wrongful discharge and breach of contract contained in count one, and tortious interference with a prospective economic advantage found in count four remained.

Defendant moved for summary judgment. On December 20, 1996, an order was executed dismissing with prejudice plaintiff's remaining claims.

The facts are as follows. On September 27, 1994, plaintiff entered into a one-year employment contract with Saint Anthony's and began serving as its Music Minister/Director of Music in October 1993. St. Anthony's Pastor, Father Robert Lynam, who was authorized to hire and fire employees, signed the contract. The contract contained the following provision for termination:

The parties involved shall give notice of termination of employment at least thirty days in advance of the termination. The termination time must be completed by the employee or if the employer does not wish the termination to be completed the employer shall fulfill all contractual financial agreements.

This litigation arose out of the fact that plaintiff had been receiving shipments of illegal anabolic steroids at St. Anthony's. He was arrested on February 1, 1995 in the parking lot of St. Anthony's for possession of anabolic steroids in violation of *N.J.S.A.* 2C:35–10(a)(1). He admitted he was expecting the package and that he knew it contained anabolic steroids. He accompanied the officers into St. Anthony's to retrieve the package. The package was found to contain 290 tablets of methandrostenolone, 240 tablets of oxandrolone, and 9 vials of deca durabolin. Plaintiff stated he had been taking steroids to assist him with bodybuilding even though he knew they were illegal. He admitted he had the steroids delivered to him at St. Anthony's on three prior occasions and that he injected himself with the deca durabolin approximately once a week.

On February 2, 1995, Father Lynam received word of a newspaper article which reported plaintiff's arrest at St. Anthony's for receiving anabolic steroids. That same day, plaintiff met with Father Lynam and, according to the Pastor, agreed to resign and

turn in his keys. The following morning, plaintiff called Father Lynam's secretary to arrange removal of his belongings. He arrived at approximately 10 a.m. with a van and two friends, who helped clean out his office.

On February 4, 1995, the pastor sent a letter to plaintiff purporting to memorialize the agreement. The letter states:

> Because of this unfortunate incident I believed it absolutely necessary that you and I meet as soon as possible to discuss a resolution to this matter vis-a-vis your continued employment by St. Anthony's Church in the position of Music Director. As you recall, during that meeting I solicited your thoughts on how we might resolve the matter. However, you told me that you were unable to offer any resolution. Because I had all day to reflect on the matter, and because of the gravity of the situation caused by you never informing me of the arrest on Church property, as well as your use of the Church's address to receive these illegal substances, *I had arrived at what I considered to be the best solution possible for all involved.*
>
> As I told you during that meeting, I think it is essential, and so I strongly urge you, to seek professional counseling to address your current problems. I also believed that because of the serious nature of the matter, as described above, *that it would be best for you to resign immediately from your position here at St. Anthony's.* At the conclusion of our meeting you indicated acceptance of my proposal and you kindly returned to me your Church keys that evening.

[Emphasis added.]

On February 5, 1995, Father Lynam found that a microphone was missing and faxed a note to plaintiff asking him to look for it. On February 7, 1995, plaintiff wrote back that he intended to continue his duties at the church unless he was fired. He also wrote that if he was not fired, he would show up for choir rehearsal the next day. Father Lynam immediately replied by fax that it was clear that plaintiff had resigned on February 2, 1995 by virtue of his returning his keys and equipment and not appearing for mass after his resignation.

Plaintiff responded by fax that he did not resign and intended to continue unless fired. Father Lynam then sent the following fax: "Let me make it perfectly clear that you are not to come on Church property, and you are not to cause any disruption with choir or Masses." Plaintiff faxed back a message questioning whether he had been fired.

On or prior to February 6, 1995, plaintiff applied to another parish for similar employment, but was rejected when inquiry was made to Father Lynam regarding plaintiff's employment at St. Anthony's and Father Lynam informed the prospective employer of the incident which had occurred. After he was indicted on two counts of possession of controlled dangerous substances, plaintiff entered into Pre–Trial Intervention.

The motion judge dismissed plaintiff's fourth count alleging interference with a prospective economic advantage finding that plaintiff could not show that "there was an intentional, without justification, interference" with his economic advantage. He reasoned that Father Lynam supplied the information only after it was requested, and the information supplied was of criminal conduct admitted by plaintiff and covered in the newspaper. Additionally, Father Lynam was protected by a qualified privilege for employment references. Plaintiff has not briefed this issue on appeal and we, therefore, deem it abandoned. *R.* 2:6–2; *River Vale Planning Board v. E & R Office Interiors, Inc.,* 241 *N.J.Super.* 391, 402, 575 *A.*2d 55 (App.Div.1990).

The judge also dismissed the wrongful discharge portion of count one, finding that there was not a factual dispute. The judge noted:

> [W]hen you are talking about wrongful discharge, certainly there is no factual dispute that under the facts and circumstances of this case, receiving packages of contraband from Greece addressed to the church, being found on the church property with two such packages of contraband steroids. The subsequent indictment for two counts possession of controlled dangerous substances.
>
> The entry of the plaintiff into the pretrial intervention program whether or not he technically plead guilty is certainly good cause, which would preclude the wrongful discharge claim. The wrongful discharge claim is dismissed.

The judge, however, perceived that there was a factual dispute concerning whether there was a resignation or a firing, and if there was a resignation, whether it was voluntary. He requested that the parties address the issue of whether there could still be a technical breach of contract, since the discharge and firing were for cause.

After receiving briefs, the judge ruled on December 20, 1996, that the breach of contract count could not survive the dismissal of the wrongful termination count. The court found:

> [Plaintiff] used, actually the church address in a scheme to obtain steroids. They were actually mailed to the church and he was arrested at the church.
>
> How a fact finder could view that as not being in bad faith, is beyond me. And I think I am comfortable finding as a matter of law, that plaintiff breached an inherent constructive condition to comport his conduct to moral norms and standards.
>
> And bottom line, I am finding that the breach of contract and wrongful termination are identical issues. And once the wrongful termination is dismissed, and findings made with respect to the termination, the breach of contract should also fall, and I find under *Brill* that no reasonable fact finder could find otherwise.

The only issue plaintiff briefed on appeal is whether the motion judge erred by granting defendant's motion for summary judgment on the breach of contract portion of count one. Plaintiff argues that a factual dispute exists over whether he resigned or was terminated, and also that the judge erred by ruling that even if plaintiff was terminated, he was not entitled to enforcement of the 30 day notice/liquidated damages clause, because he breached an implied covenant of good faith and fair dealing.

The standard for summary judgment is set forth in *Rule* 4:46–2(c). *Rule* 4:46–2(c) provides that summary judgment should be granted:

> if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law. An issue of fact is genuine only if, considering the burden of persuasion at trial, the evidence submitted by the parties on the motion, together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact.

To determine whether an issue of fact is genuine, the judge must decide whether:

> the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party.... If there exists a single, unavoidable resolution of the alleged disputed issue of fact, that issue should be considered insufficient to constitute a 'genuine' issue of material fact for purposes of *Rule* 4:46–2.
>
> [*Brill v. Guardian Life Ins. Co.*, 142 *N.J.* 520, 540, 666 *A*.2d 146 (1995).]

Thus, "when the evidence 'is so one-sided that one party must prevail as a matter of law,' ... the trial court should not hesitate to grant summary judgment." *Ibid.* In ruling on the motion, the non-moving party must receive all favorable inferences. *Judson v. Peoples Bank and Trust Co. of Westfield,* 17 *N.J.* 67, 75, 110 *A.*2d 24 (1954).

We first consider the wrongful termination issue. Terms will be implied into a contract where the parties intended them and the terms are necessary to give business efficacy to the contract as written. *Onderdonk v. Presbyterian Homes of New Jersey,* 85 *N.J.* 171, 182, 425 *A.*2d 1057 (1981). In every contract, there is an implied covenant of good faith and fair dealing. *Ibid.; Bak–A–Lum v. Alcoa Building Products, Inc.,* 69 *N.J.* 123, 129– 30, 351 *A.*2d 349 (1976); *Palisades Properties, Inc. v. Brunetti,* 44 *N.J.* 117, 130, 207 *A.*2d 522 (1965). In other words, there is an implied covenant that "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract[.]" *Association Group Life, Inc. v. Catholic War Veterans,* 61 *N.J.* 150, 153, 293 *A.*2d 382 (1972).

Even where, as here, the employee performs the duties contracted for satisfactorily, criminal activity by the employee can justify his discharge for breach of an employment contract. 30 *Corpus Juris Secondum,* Employer–Employee, Section 64, provides that "[m]isconduct of an employee which is inconsistent with the relation of employer and employee justifies discharge." Furthermore, as 30 *Corpus Juris Secondum,* Section 160, states, "[a]n employee's recovery of wages under the contract may be prevented by his misconduct, fraud, or disloyalty in a manner substantially affecting his employment contract."

It is clear that plaintiff intentionally ordered the anabolic steroids for his personal use and had them shipped to St. Anthony's address. This constituted a breach of the implied conditions of plaintiff's contract of employment. The receipt of anabolic steroids at work indirectly involved St. Anthony's in the commission of

a criminal offense and constituted gross misconduct. The criminal offense while not immediately injurious to St. Anthony's, eventually resulted in his arrest on church property and a newspaper report naming St. Anthony's as plaintiff's employer.

As the Restatement (Second) of Agency provides:

Unless otherwise agreed, an agent is subject to a duty not to conduct himself with such impropriety that he brings disrepute upon the principal or upon the business in which he is engaged. If the service involves personal relations, he has a duty not to act in such a way as to make continued friendly relations with the principal impossible.

[*Restatement (Second) of Agency,* § 380 (1957).]

Comment a. to Section 380 expounds upon the duty of good conduct:

Normally, the success of a business is to a considerable extent dependent upon the reputation of the persons connected with it. An agent who acquires a reputation for qualities which are inconsistent with the satisfactory performance of his business is unable to serve the principal to the best advantage. It is therefore, the ordinary understanding that he will use care so to conduct himself that his usefulness in this respect will not be impaired.

The nature of the business and the position of the agent determine what reputation the agent has agreed to maintain and what conduct can be expected from him.... [A]lthough the employer has no control over the conduct of such persons when they are not engaged in his work, he has such interest in the general integrity of his business household that it may be a breach of duty for one of them to acquire a deserved reputation for loose living, or to commit a serious crime.

[*Restatement (Second) of Agency,* § 380, comment a. (1957).]

■ When the duty of good conduct is violated by an employee, the employer has good cause to terminate a contract and the termination will not support a cause of action for breach of contract. *See Kippen v. American Automatic Typewriter Co.,* 324 *F.*2d 742 (9th Cir.1963) (noting that an employer may, without breach of contract, terminate an arrangement with his agent because of excessive drink habits that reflect poorly upon the business).

■ By virtue of his arrest, plaintiff brought negative publicity to St. Anthony's. Moreover, steroid use, especially through intravenous injection, carries various health and behavioral risks to others. Injecting steroids creates an increased risk of contracting

any number of infectious diseases. George Fan, *Anabolic Steroid and Human Growth Hormone Abuse: Creating an Effective and Equitable Ergogenic Drug Policy,* 1994 *U. Chi. Legal Forum* 439, 463 (1994). Further, steroids have been known to cause "roid rages" where the slightest provocation "can cause an exaggerated, violent and often uncontrolled response." *Id.* at 451. Plaintiff served in a position where he would come into contact with many members of the parish. St. Anthony's could not have been expected to tolerate the risk that plaintiff might contract a communicable disease or attack a member of the parish. As a result, defendant had good cause to terminate the employment contract by virtue of plaintiff's breach of the implied covenant of good faith and fair dealing and because of the risks created by his illicit steroid use.

■ Additionally, in *Custom Communications Eng'g, Inc. v. E.F. Johnson Co.,* 269 *N.J.Super.* 531, 636 *A.*2d 80 (App.Div.1993), we considered the same employment arrangement and held that a wrongful discharge claim could not be sustained, since by the contract's terms, the employer could terminate it without cause upon thirty-days' notice. *Id.* at 542, 636 *A.*2d 80. We concluded: "Where, as here, the right to 'terminate a contract is absolute under the wording in an agreement, the motive of a party in terminating such an agreement is irrelevant to the question of whether the termination is effective.'" *Ibid.* (quoting *Karl's Sales and Service, Inc. v. Gimbel Brothers, Inc.,* 249 *N.J.Super.* 487, 495, 592 *A.*2d 647 (App.Div.), *certif. denied,* 127 *N.J.* 548, 606 *A.*2d 362 (1991)). The only exception to the rule that an at-will employee may be terminated without cause is that the termination cannot violate public policy. *Pierce v. Ortho Pharmaceutical Corp.,* 84 *N.J.* 58, 74, 417 *A.*2d 505 (1980). "[U]nless an employee at will identifies a specific expression of public policy, he may be discharged with or without cause." *Id.* at 72, 417 *A.*2d 505. As defendant aptly argues, plaintiff does not and cannot cite any violation of public policy.

■ Since defendant had an absolute right to terminate plaintiff's employment at-will, the motion judge was justified in dismissing the wrongful termination count even if the thesis that plaintiff was terminated is accepted. Therefore, we affirm the dismissal of the wrongful discharge claim.

■ We now consider the breach of contract claim. It appears that defendant, through its pastor, chose not to fire plaintiff. Instead, the pastor requested and allegedly obtained plaintiff's immediate resignation. Plaintiff thereafter denied he resigned and expressed a willingness to return to his parish duties. The pastor refused even to permit him to return to the church premises. Plaintiff, therefore, seeks to invoke his contract rights under its termination provisions which he argues requires no less than 30 days of compensation.

We conclude that the termination clause did no more than create an at-will employment relationship between the parties, providing for the rights and duties of each party in the event the contract was to be terminated without cause. These provisions did not alter the right of the employer to discharge the employee for cause, including, as here, the right to terminate for breach of an implied condition of the contract. *H. Vincent Allen & Assoc., Inc. v. Weis*, 63 *Ill.App*.3d 285, 19 *Ill.Dec.* 893, 900, 379 *N.E*.2d 765, 772 (1978) (citing *Corman Aircraft Corp. v. Weihmiller*, 78 *F*.2d 241, 243 (7th Cir.1935)).

■ We are convinced that plaintiff, having breached the employment contract, and having been rightfully discharged for cause, should not be allowed to recover termination pay under the termination clause of the breached contract. *H. Vincent Allen & Assoc., Inc., supra*, 19 *Ill.Dec.* at 900, 379 *N.E*.2d at 772 (citing *Hosking v. Hollaender Mfg. Co.*, 114 *Ohio App.* 70, 175 *N.E*.2d 201, 203 (1961)). This is particularly so where it would have been so strikingly improvident for the pastor to have permitted plaintiff to continue for the thirty day period referred to in the termination clause.

We, therefore, affirm the dismissal of count one as it relates to both the wrongful discharge and breach of contract claims. We also affirm as to the dismissal of count four which was not briefed on appeal and was thereby abandoned.

Affirmed.