**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3703-21

MS SERVICES, LLC, as
assignee of BANK OF THE
WEST,

     Plaintiff-Respondent,

v.

PASQUALE CALABRIA,

     Defendant/Third-Party
     Plaintiff-Appellant,

v.

BANK OF THE WEST and DAN
PRICE,

     Third-Party Defendants-
     Respondents,

and

SCHACHTER PORTNOY,
LLC, and JOEL S. SCHNECK,

     Third-Party Defendants.

_____

Submitted January 30, 2024 – Decided February 26, 2024

Before Judges Rose and Perez Friscia.

On appeal from the Superior Court of New Jersey, Law Division, Ocean County, Docket No. L-0102-17.

Steven A. Lang, attorney for appellant.

Shapiro Croland Reiser Apfel & Di Iorio, LLP, attorneys for respondent Bank of the West (Glenn R. Reiser and Alexander G. Benisatto, on the brief).

Snellings Law LLC, attorney for respondents MS Services, LLC, and Dan Price (Robert S. Snellings, on the brief).

PER CURIAM

Defendant and third-party plaintiff Pasquale Calabria appeals from the March 12, 2021 Law Division orders dismissing with prejudice his amended counterclaim against plaintiff MS Services, LLC and his third-party complaint against third-party defendants Bank of the West (BOTW) and Dan Price, the managing member of MS Services. Following our review of the record and the applicable law, we affirm.

I.

We review the facts asserted in Calabria's second amended counterclaim and third-party complaint as true and accord "every reasonable inference of fact." See Guzman v. M. Teixeira Int'l, Inc., 476 N.J. Super. 64, 67 (App. Div.

2023) (quoting Major v. Maguire, 224 N.J. 1, 26 (2016)).  In evaluating a motion to dismiss we also consider the "exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim."  Myska v. N.J. Mfrs. Ins. Co., 440 N.J. Super. 458, 482 (App. Div. 2015) (quoting Banco Popular N. Am. v. Gandi, 184 N.J. 161, 183 (2005)).  This yacht repossession dispute arose from Calabria's default on a consumer loan.

We derive the following facts from Calabria's pleadings.  In June 2005, Calabria bought a Voyager yacht from Staten Island Boat Sales, Inc. for approximately $558,000.  To finance the purchase, Calabria borrowed $250,000 from Essex Credit Corporation (Essex).  Essex was a wholly owned subsidiary of BOTW and later merged into BOTW.[1]  On June 23, Calabria signed loan documents consisting of:  a promissory note (note); a consumer security agreement (agreement); and a disclosure statement.  The note required Calabria to make "240 monthly payments of $1,790.26" beginning on July 23.[2]

The agreement memorialized Calabria's granting of a security interest to Essex.  In the agreement, Calabria represented he resided in Brielle and that the

[1]  While we refer to BOTW throughout this opinion, we note that on March 1, 2023, we granted substitution of BMO Harris Bank as the "real party in interest."

[2]  The parties do not dispute that Calabria also signed a preferred ship mortgage granting a security interest in the yacht.

3

yacht would be located at Seaside Park Municipal Marina. Calabria agreed "to keep the property at . . . the location specified in the property definition of this [a]greement." The agreement required Calabria to provide BOTW his "new address in writing prior to moving." Further, he "agree[d] to defend [BOTW]'s rights in the [p]roperty against the claims and demands of all persons" and "w[ould] not allow any other liens on the [p]roperty, even if they we[re] junior to [BOTW]'s lien." A default would occur under the agreement if, "[a]ny creditor or governmental agency trie[d] to take any of the [p]roperty or any other of [Calabria's] property in which [BOTW] ha[d] a lien." In the event of a default, the agreement stated:

> In addition, [BOTW] w[ould] have all the rights of a secured party under the Uniform Commercial Code [(UCC), N.J.S.A. 12A:1-101 to 12A:12-26,] and other applicable law. This mean[t], among other rights, that [BOTW] may enter upon the premises at the address shown above and take the [p]roperty peaceably and sell it. [BOTW] may also, to the extent permitted by law, enter peaceably upon other premises for the purpose of retaking the [p]roperty, and [Calabria] consent[ed] to such entry. If the [p]roperty contain[ed] any goods not covered by this [a]greement at the time of the repossession, [Calabaria] agree[d] that [BOTW] may take such goods, provided that [BOTW] ma[de] reasonable efforts to return them to [Calabria] after repossession.

4

Calabria could cure "any default . . . other than a default in payment."  If BOTW did not give Calabria "a notice of a breach of the same provision of th[e] [a]greement within the preceding twelve . . . months," Calabria could cure the breach if, "after receiving written notice from [BOTW] demanding cure of such default," he "cure[d] the default within fifteen . . . days" or took steps that BOTW deemed sufficient if the cure required more than fifteen days.  The agreement also stated that "[u]nless the [p]roperty threaten[ed] to decline speedily in value or [wa]s of a type customarily sold on a recognized market," BOTW would give "reasonable notice" to Calabria that was "at least ten . . . days before the time of the sale or disposition" except otherwise provided by law.

Between July 2005 and November 2014, Calabria made 113 payments. Calabria had moved and stored the yacht at the PH Marina LLC in Key Largo, Florida.  On November 4, 2014, BOTW received a "Notice of [N]onjudicial Sale of Vessel" due to a lien held by the PH Marina "in the amount of $6,980.56." BOTW allegedly mailed Calabria a written notice dated November 21 stating it would "take further action to protect [its] interest in the [yacht] if the lien [wa]s not paid in full" by November 26.  Calabria maintained that he never received the notice.

A-3703-21

On December 5, BOTW repossessed the yacht. Calabria averred "BOTW's agents damaged" the yacht, and he had no opportunity to remove his personal property. On December 10, BOTW "cancelled the auto debit payment function" that Calabria had established for monthly payments. Four months later, BOTW's agents sold the yacht for $146,000. Calabria maintained he was not notified of the sale. BOTW mailed Calabria an "Accounting and Explanation of Deficiency" demand letter dated April 21, 2015 for $72,905.37. The letter stated failure to pay "may subject [Calabria] to further collections actions, including a lawsuit seeking judgment against [him]."

On August 18, BOTW assigned its account to MS Services for collection. Dan Price of MS Services was responsible as collection of monies owed. On January 9, 2017, BOTW filed a one count breach of contract complaint. On August 15, default judgment was entered in the amount of $87,313.52. Almost two years later, on July 11, 2019, Calabria moved to vacate the judgment alleging he was not served, which was granted. Calabria filed an answer and a counterclaim against BOTW.[3] After MS Services answered, Calabria filed an

---

[3] Although the judge granted MS Services's motion to amend the caption from BOTW to "MS SERVICES as assignee of [BOTW]" on July 21, 2017, Calabria designated plaintiff as BOTW in this pleading.

6

amended counterclaim and third-party complaint against BOTW and Price. MS Services thereafter filed an amended breach of contract complaint.

Calabria answered and filed a second amended counterclaim and a third-party complaint adding third-party defendants Schachter Portnoy, LLC, Price, and Joel S. Schneck. Calabria's counterclaim and third-party complaint alleged: (1) breach of contract (against BOTW); (2) breach of the implied covenant of good faith and fair dealing (against BOTW); (3) wrongful repossession (against BOTW and MS Services); (4) violations of the New Jersey Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 to -228, (against BOTW and MS Services); (5) invasion of privacy (against Schachter Portnoy and Schneck); (6) civil conspiracy (against BOTW, MS Services, Price, Schachter Portnoy, and Schneck); and (7) conversion (against BOTW).

MS Services and Price moved to dismiss Calabria's counterclaim and the third-party complaint with prejudice for failure to state a claim upon which relief could be granted. BOTW similarly moved for dismissal. On March 12, 2021, following argument, the judge issued separate orders accompanied by a written statement of reasons dismissing with prejudice Calabria's counterclaim against MS Services and his third-party complaint against BOTW and Price. The judge

also dismissed Calabria's third-party complaint with prejudice against Schachter Portnoy and Schneck, separately granting their motion.

On March 19, MS Services moved for summary judgment on its deficiency claim, which the judge denied. The judge ordered a hearing "on the commercial reasonableness of the repossession and the sale of . . . [Calabria]'s yacht." On June 1, 2022, following a trial, the judge issued an order and oral decision dismissing MS Services's complaint with prejudice for failure to repossess and sell the yacht in a commercially reasonable manner. Calabria thereafter moved to vacate dismissal of its CFA, civil conspiracy, and conversion claims, which was denied.

On appeal, Calabria argues the judge incorrectly: applied the legal standard for a motion to dismiss under Rule 4:6-2(e); dismissed his claims against BOTW; dismissed his claims against MS Services; and dismissed his claim against Price.

## II.

We review de novo a trial court's order granting a motion to dismiss pursuant to Rule 4:6-2(e). See Baskin v. P.C. Richard & Son, LLC, 246 N.J. 157, 171 (2021). "When deciding a motion to dismiss under Rule 4:6-2(e), the test to determine 'the adequacy of a pleading' is 'whether a cause of action is

"suggested" by the facts.'"  Doe v. Estate of C.V.O., 477 N.J. Super. 42, 54 (App. Div. 2023) (quoting MasTec Renewables Constr. Co. v. SunLight Gen. Mercer Solar, LLC, 462 N.J. Super. 297, 309 (App. Div. 2020)).

"We assume that the allegations in the pleadings are true" and afford the pleading party "all reasonable inferences."  Sparroween, LLC v. Township of W. Caldwell, 452 N.J. Super. 329, 339 (App. Div. 2017).  At this early stage of litigation, we are not concerned with a pleading party's ability to prove its allegations.  Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989).  Instead, we examine "'the legal sufficiency of the facts alleged on the face of the complaint,' limiting [our] review to 'the pleadings themselves.'"  Dimitrakopoulos v. Borrus, Goldin, Foley, Vignuolo, Hyman & Stahl, P.C., 237 N.J. 91, 107 (2019) (first quoting Printing Mart, 116 N.J. at 107; and then quoting Roa v. Roa, 200 N.J. 555, 562 (2010)).  We "search[ ] the complaint in depth and with liberality to ascertain whether the fundament of a cause of action may be gleaned even from an obscure statement of claim, opportunity being given to amend if necessary."  Printing Mart, 116 N.J. at 746 (quoting Di Cristofaro v. Laurel Grove Mem'l Park, 43 N.J. Super. 244, 252 (App. Div. 1957)).  "If we are able to do so, 'the complaint should survive this preliminary stage.'"  Petro v. Platkin, 472 N.J. Super. 536, 563 (App. Div. 2022) (quoting

9

Wreden v. Township of Lafayette, 436 N.J. Super. 117, 125 (App. Div. 2014)). "Nonetheless, 'the essential facts supporting plaintiff's cause of action must be presented in order for the claim to survive; conclusory allegations are insufficient in that regard.'" AC Ocean Walk, LLC v. Am. Guarantee & Liab. Ins. Co., ___ N.J. ___, ___ (2024) (slip op. at 17) (quoting Scheidt v. DRS Techs., Inc., 424 N.J. Super. 188, 193 (App. Div. 2012)).

Judges may consider documents specifically referenced in the complaint "without converting the motion into one for summary judgment." Myska, 440 N.J. Super. at 482 (quoting E. Dickerson & Son, Inc. v. Ernst & Young, LLP, 361 N.J. Super. 362, 365 n.1 (App. Div. 2003), aff'd, 179 N.J. 500 (2004)). "In evaluating motions to dismiss, courts consider 'allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim.'" Ibid. (quoting Banco, 184 N.J. at 183).

### III.

We begin by considering Calabria's contentions that the motion judge applied the incorrect standard of review and impermissibly decided disputed facts. We agree that while the judge's statement of reasons comprehensively addressed the sufficiency of Calabria's claims, it also appears he made findings regarding material issues of fact by commenting on Calabria's lack of "evidence"

and "demonstration" of proofs. However, as "appeals are taken from orders" and not the "reasons given for the ultimate conclusion," Hayes v. Delamotte, 231 N.J. 373, 387 (2018) (quoting Do-Wop Corp. v. City of Rahway, 168 N.J. 191, 199 (2001)), and because our review is de novo, we are unpersuaded that either a remand or reversal is warranted. See Ellison v. Evergreen Cemetery, 266 N.J. Super. 74, 78 (App. Div. 1993) ("[A]n order or judgment will be affirmed on appeal if it is correct, even though the judge gave the wrong reasons for it."). Further, we observe that the judge's references to the uncontested loan documents attached to the pleadings were permissible. See Myska, 440 N.J. Super. at 482 (quoting Banco, 184 N.J. at 183). After reviewing Calabria's second amended pleading, we reach the same conclusion as the judge for the reasons expressed below.

IV.

A. Contract Claims

We first address Calabria's contention that his claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and wrongful repossession were erroneously dismissed. We begin our review by considering Calabria's second amended counterclaim and third-party complaint to determine whether the legal requisites for the claims are "apparent from the

11

complaint itself." Edwards v. Prudential Prop. & Cas. Co., 357 N.J. Super. 196, 202 (App. Div. 2003). Indeed, the "motion should be granted if even a generous reading of the allegations does not reveal a legal basis for recovery." Ibid.

We conclude Calabria's contract claims failed to state a claim because they were time-barred under the UCC's four-year statute of limitations. The UCC governs Calabria's loan transaction. The loan documents annexed to Calabria's pleadings were executed on June 23, 2005. Notably, the agreement provided that BOTW would "have all the rights of a secured party under the" UCC. Calabria acknowledged in his amended pleading that: the agreement "constitute[d] a secured transaction within the intendment of [N.J.S.A.] 12A:9-101 [to -108]"; the loan transaction under the agreement "constitute[d] a consumer goods transaction as defined by [N.J.S.A.] 12A:9-102(a)(26)"; and that he was "a consumer obligor as defined by [N.J.S.A.] 12A:9-102(a)(25)."

N.J.S.A. 12A:9-102(a)(26) states that a "[c]onsumer transaction" is "a transaction in which (i) an individual incurs an obligation primarily for personal, family, or household purposes, (ii) a security interest secures the obligations, and (iii) the collateral is held or acquired primarily for personal, family, or household purposes." Further, N.J.S.A. 12A:9-103(b) states in pertinent part, "a security interest in goods is a purchase-money security interest" if "the goods

are purchase-money collateral with respect to that security interest."  The execution of the promissory note created a purchase-money security interest, as Calabria had used the loan proceeds obtained from BOTW to finance his purchase of the yacht.  See N.J.S.A. 12A:9-103(a)(1)-(2) & (b)(1).  We further note Calabria's pleading also alleged BOTW and MS Services violated the UCC provision "[d]isposition of collateral after default," N.J.S.A. 12A:9-610, by disposing the yacht in a commercially unreasonable manner.  Despite Calabria's argument on appeal to the contrary, Calabria's loan transaction with BOTW falls squarely under the UCC.

The UCC further provides "[a]n action for breach of any contract for sale must be commenced within four years after the cause of action has accrued." N.J.S.A. 12A:2-725(1).  Calabria's pleading provided the yacht was repossessed on December 5, 2014, and sold on April 8, 2015.  Calabria's original counterclaim was not filed, however, until November 10, 2019; thus, the claims were not filed within the applicable statute of limitations.  "A statute of limitations is what its name indicates:  a statute enacted by the Legislature to limit the time period in which a lawsuit can be filed."  Barron v. Gersten, 472 N.J. Super. 572, 576 (App. Div. 2022).  Therefore, Calabria failed to state a claim for breach of contract, breach of the implied covenant of good faith and

fair dealing, and wrongful repossession because the UCC's four-year statute of limitations barred his claims.

Further, Calabria's wrongful repossession claim alleged MS Services "violated the UCC." Calabria's claim for wrongful repossession was subject to N.J.S.A. 12A:9-404(b), which provides, in pertinent part, "the claim of an account debtor against an assignor may be asserted against an assignee under subsection (a) only to reduce the amount the account debtor owes." Thus, Calabria's affirmative contract claim against MS Services not only was untimely but also impermissible under N.J.S.A. 12A:9-404(b).

We reject Calabria's argument that the judge's dismissal of his contract claims was inconsistent with the judge's June 1, 2022 oral decision dismissing MS Services's deficiency claim. Calabria's contract claims were time-barred warranting dismissal under Rule 4:6-2(e); thus, the judge's trial decision that the deficiency judgment was unsubstantiated because the repossession was commercially unreasonable was not inconsistent.

B. Tort Claims

1. CFA Claims

"The [CFA] provides a private cause of action to consumers who are victimized by fraudulent practices in the marketplace." Romero v. Gold Star

Distrib., LLC, 468 N.J. Super. 274, 302 (App. Div. 2021) (alteration in original) (quoting Gonzalez v. Wilshire Credit Corp., 207 N.J. 557, 576 (2011)).  The Legislature enacted the CFA to protect against the following:

> The act, use or employment by any person of any commercial practice that is unconscionable or abusive, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice.
>
> [N.J.S.A. 56:8-2.]

"In light of the CFA's remedial purpose, courts liberally enforce the Act to fulfill its objective to protect consumers from prohibited unconscionable acts by sellers."  All the Way Towing, LLC v. Bucks Cnty. Int'l, Inc., 236 N.J. 431, 434 (2019).

Rule 4:5-8(a) states, "in all allegations of . . . fraud . . . , particulars of the wrong, with dates and items if necessary, shall be stated insofar as practicable." "Because a claim under the CFA is essentially a fraud claim, the rule requires that such claims be pled with specificity to the extent practicable."  Hoffman v. Hampshire Labs, Inc., 405 N.J. Super. 105, 112 (App. Div. 2009).

15

"To make a prima facie claim under the CFA, a plaintiff must establish three elements: '(1) unlawful conduct by defendant; (2) an ascertainable loss by plaintiff; and (3) a causal relationship between the unlawful conduct and the ascertainable loss.'" Romero, 468 N.J. Super. at 302 (quoting Bosland v. Warnock Dodge, Inc., 197 N.J. 543, 557 (2009)). "An 'unlawful practice' contravening the CFA may arise from (1) an affirmative act; (2) a knowing omission; or (3) a violation of an administrative regulation." Id. at 302-03 (quoting Dugan v. TGI Fridays, Inc., 231 N.J. 24, 51 (2017)). An ascertainable loss means "one that is 'quantifiable or measurable,' not 'hypothetical or illusory.'" D'Agostino v. Maldonado, 216 N.J. 168, 185 (2013) (quoting Thiedemann v. Mercedes-Benz U.S., L.L.C., 183 N.J. 234, 248 (2005)). Generally, the six-year statute of limitations under N.J.S.A. 2A:14-1 governs "CFA claims arising out of the sale of merchandise." NAACP of Camden Cnty. E. v. Foulke Mgmt. Corp., 421 N.J. Super. 404, 432 (App. Div. 2011) (citing N.J.S.A. 2A:14-1).

Regarding "unconscionable commercial practice," our Supreme Court has recognized that "the Legislature must have intended that substantial aggravating circumstances be present in addition to" a mere breach of contract or breach of warranty, since "any breach of warranty or contract is unfair to the non-

16

breaching party." Cox v. Sears Roebuck & Co., 138 N.J. 2, 18 (1994). Every breach of contract has an inherent unfairness "when one of the contracting parties is denied the advantage for which he contracted, but this is why remedial damages are awarded on contract claims. If such an award is to be trebled, the . . . [L]egislature must have intended that substantial aggravating circumstances be present." D'Ercole Sales, Inc. v. Fruehauf Corp., 206 N.J. Super. 11, 31 (App. Div. 1985) (first alteration in original) (quoting United Roasters, Inc. v. Colgate-Palmolive Co., 649 F.2d 985, 992 (4th Cir. 1981)). "[A] tort remedy does not arise from a contractual relationship unless the breaching party owes an independent duty imposed by law." Saltiel v. GSI Consultants, Inc., 170 N.J. 297, 316 (2002). We further observe, "the economic loss doctrine prohibits the recovery in a tort action of economic losses arising out of a breach of contract." Sun Chem. Corp. v. Fike Corp., 243 N.J. 319, 328 n.2 (2020).

As an initial matter, we part ways with the judge's determination that to maintain an alternative CFA claim to a UCC contract claim the factual predicates for fraud in the inducement must be alleged. The UCC specifically recognizes that "fraud, misrepresentation, duress, [and] coercion . . . supplement its provisions," except where such application is "displaced by the particular provisions of the [UCC]." N.J.S.A. 12A:1-103(b); see also Jefferson Loan Co.,

Inc. v. Session, 397 N.J. Super. 520, 525 (App. Div. 2008) (concluding that "an assignee of a [retail installment sales contract] can be liable under the CFA for the assignee's own unconscionable commercial practices and activities related to the assignee's repossession and collection practices, in connection with the subsequent performance of" such a contract); see also Gonzalez, 207 N.J. at 577-78 (holding that "collecting or enforcing a loan, whether by the lender or its assignee, constitutes the 'subsequent performance' of a loan, an activity falling within the coverage of the CFA").

Courts are to liberally construe the CFA to permit consumer's claims, All the Way Towing, 236 N.J. at 442, and a CFA claim may be alternatively pleaded to a UCC contract claim involving the same underlying facts. See Dreier Co., Inc. v. Unitronix Corp., 218 N.J. Super. 260, 272 (App. Div. 1986) (declining to "deprive a consumer of [a] statutory remedy" under the CFA "simply because the transaction is controlled by the [UCC]" where plaintiff sought recovery for not only "economic loss" but also "treble damages" under the CFA); Est. of Paley v. Bank of Am., 420 N.J. Super. 39, 54 (App. Div. 2011) ("There is no question that in appropriate circumstances, a CFA claim can be brought in addition to a UCC claim.").

Calabria's alleged CFA claims against BOTW and MS Services failed to state a claim because his bare allegations of violations did not assert an unlawful practice. Stated another way, mere statements of acts which constitute a breach under the agreement without any specificity of the deceptive action or inaction are insufficient to state a CFA claim. See Hoffman, 405 N.J. Super. at 112. We recognize the "CFA's reach presently protects the public even when a merchant acts in good faith" but has violated a prohibited commercial practice under the Act. See All the Way Towing, 236 N.J. at 442. However, we are required to "examin[e] the legal sufficiency of the facts alleged on the face of the complaint," and determine if "a cause of action is 'suggested' by the facts." Green v. Morgan Props., 215 N.J. 431, 451 (2013) (quoting Printing Mart, 116 N.J. at 746). Here, Calabria's pleaded facts did not suggest a CFA claim.

Calabria's CFA claim against BOTW stated that it "engaged in unconscionable commercial practices, deception, fraud, false promises, false pretenses and/or misrepresentations in its interactions with Calabria" and asserted approximately sixteen alleged violations regarding the yacht's repossession and sale, which were "not in conformity with reasonable commercial practices." Calabria's recasting of the allegations from his contract claims almost verbatim as CFA claims with the additional language "violated

19

the CFA" is insufficient. Calabria failed to sufficiently plead unlawful "conduct . . . [that] transcends an 'unconscionable consumer practice' under the facts and circumstances of this commercial transaction." See D'Ercole, 206 N.J. Super. at 31. "A transaction should not be removed from the ambit of the UCC to the area of tortious conduct simply by making general allegations of fraud." Custom Commc'ns Eng'g, Inc. v. E.F. Johnson Co., 269 N.J. Super. 531, 541 (App. Div. 1993). Because Calabria's CFA claims lacked averment of a fraudulent conduct or an unconscionable practice by BOTW that was prohibited under N.J.S.A. 56:8-2, dismissal for failure to state a claim was warranted.

Calabria's CFA claim against MS Services alleged that MS Services asserted "the Voyager was repossessed because Calabria failed to make payments when due." This CFA claim was also insufficiently pleaded to sustain a cause of action. Notably, Calabria's pleading acknowledged BOTW received a "Notice of [N]onjudicial Sale of Vessel" for the yacht due to a lien held by the PH Marina "in the amount of $6,980.56." Further, Calabria included that "BOTW assigned the [l]oan to MS Services on August 18, 2015," which was well after the yacht was repossessed and sold. Again, mere assertions of a violation without a modicum of specificity as to the alleged unlawful conduct are insufficient.

Calabria was not foreclosed from pleading alternative CFA claims to the time-barred contract claims, and "privity [wa]s not a condition precedent to recovery under the" CFA. Marrone v. Greer & Polman Constr., Inc., 405 N.J. Super. 288, 296 (App. Div. 2009) (abrogated on other grounds by Dean v. Barrett Homes, Inc., 204 N.J. 286 (2010)). However, Calabria's failure to assert an unlawful act or omission by MS Services was fatal to his claim.

2. Conversion

Calabria's contention that he sufficiently pleaded a conversion claim for his personal property against BOTW is unsupported. The tort of conversion "is the intentional exercise of dominion and control over chattel that seriously interferes with the right of another to control that chattel." Meisels v. Fox Rothschild LLP, 240 N.J. 286, 305 (2020); see also LaPlace v. Briere, 404 N.J. Super. 585, 595 (App. Div. 2009). A court must first assess "whether [the] defendant has independent dominion and control over the subject property." Meisels, 240 N.J. at 305. Notably, "where the defendant lawfully acquired plaintiff's property, the plaintiff must show that he demanded the return of the property and that the defendant refused compliance." Ibid. In other words, "[t]he demand is the linchpin that transforms an initial lawful possession into a setting of tortious conduct." Ibid. The rationale is that the demand "puts the

defendant on notice and is crucial when the initial possession is lawful or when it cannot be said that the holder is exercising independent dominion or control." Ibid.

Fatal to his claim, Calabria did not plead that he demanded his personal property from BOTW, as was required from the initial possession. It is undisputed BOTW received the lien notice against the yacht and repossessed the yacht under the agreement. Calabria claimed BOTW repossessed and sold the yacht without his consent and that he "demanded . . . BOTW pay him an amount equal to the value of his personal property." This assertion failed to plead a conversion cause of action because consent was not required under the operative loan documents and a demand for financial remuneration was insufficient. We are unpersuaded by Calabria's argument that any demand "would have been futile." See Meisels, 240 N.J. at 306.

### 3. Civil Conspiracy

As Calabria failed to assert a tort claim against BOTW, MS Services, and Price, his conspiracy claims are without merit. Calabria's civil conspiracy claims lacked an "underlying wrong which, absent the conspiracy, would give a right of action." Banco, 184 N.J. at 177-78; see also G.D. v. Kenny, 205 N.J. 275, 312 (2011) (dismissing plaintiff's civil conspiracy claim because plaintiff

"c[ould not] establish that defendants committed an unlawful act or a wrong against him that consistute[d] a tort entitling him to a recovery"). Thus, Calabria's conspiracy claims could not survive dismissal.

To the extent not addressed, Calabria's remaining arguments lack sufficient merit to warrant discussion in our written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3703-21